IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SHIREE BOYCE**, | Case No. 6:11-cv-06278-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **MICHAEL ASTRUE**, Commissioner Social Security Administration, | |
| Defendant. | |

Kathryn Tassinari, Harder, Wells, Baron & Manning, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201; Matthew W. Pile, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

PAGE 1, OPINION AND ORDER

**SIMON, District Judge.**

Plaintiff Shiree Boyce ("Boyce") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I. BACKGROUND

### A. The Application

Plaintiff Shiree Boyce was born in 1981. Transcript ("Tr.") 125 (Dkt. 6.) She has a high school education and took additional coursework in massage school. Tr. 153. Ms. Boyce applied for benefits on August 22, 2008. Tr. 121. She initially alleged disability since July 21, 2008 (Tr. 121) due to attention-deficit hyperactivity disorder, depression, anxiety, post-traumatic stress disorder, a left knee impairment, foot, and back injuries. Tr. 146. During her hearing, Ms. Boyce amended her onset date to July 1, 2008. Tr. 30. The Commissioner denied Plaintiff's applications initially and upon reconsideration. Tr. 75-92. An Administrative Law Judge ("ALJ") held a hearing on April 28, 2010. Tr. 27-70. On June 8, 2010, the ALJ found Ms. Boyce not to be disabled. Tr. 12-21. On July 8, 2011, the Appeals Council declined to review the ALJ's decision. Tr. 1-3. This made the ALJ's decision the final decision of the Commissioner, subject to review by this court. 20 C.F.R. § 410.670a.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

PAGE 2, OPINION AND ORDER

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant does have a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

    4.        Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

    5.        Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.     The ALJ's Decision

At step one of the sequential process, the ALJ found that Ms. Boyce had not engaged in substantial gainful activity. Tr. 14. At step two, the ALJ found that Ms. Boyce had "severe" impairments of degenerative joint disease of the left knee, obesity, affective disorder, post-

PAGE 4, OPINION AND ORDER

traumatic stress disorder, attention deficit hyperactivity disorder, "math disorder," "disorder of written expression," and "alcohol abuse disorder." *Id.* At step three, the ALJ found that these impairments did not meet or equal a listed disorder. Tr. 15. The ALJ then assessed the following RFC:

> [T]he claimant has the residual functional capacity to perform less than a full range of sedentary work . . . . She can lift 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours in an 8 hour day. She can stand and walk no more than 2 hours in an 8 hour day. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally bend, crouch, and stoop. She should not crawl or kneel. She should not be exposed to hazards. She can have occasional contact with the public. She is limited to tasks no more complex than 1 to 3 steps or the equivalent to SVP 2 (entry level employment).

Tr. 16. At step four, the ALJ concluded that this RFC precluded performance of Ms. Boyce's past relevant work. Tr. 19. At step five, the ALJ held that Ms. Boyce had the residual functional capacity to perform work that exists in significant numbers in the national economy. Tr. 20. The ALJ therefore found Ms. Boyce to be not disabled. Tr. 21.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

PAGE 5, OPINION AND ORDER

interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.    DISCUSSION

Ms. Boyce asserts that: (1) the ALJ erroneously evaluated the opinion of treating physician Raymond Westermeyer; (2) the ALJ improperly discredited Plaintiff's symptom testimony; (3) the ALJ erroneously evaluated Plaintiff's lay evidence; and (4) at step five in the sequential process, the ALJ should have found Plaintiff to be disabled.

**A.    The Opinion of Plaintiff's Treating Physician**

Ms. Boyce argues that the ALJ improperly evaluated the opinion of treating physician Raymond Westermeyer, M.D. Pl.'s Opening Br. 16. (Dkt. 9.)

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises among medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician, and in turn give greater weight to an examining physician's opinion than that of a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If medical source opinions conflict, however, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830.

Dr. Westermeyer treated Ms. Boyce between June 16, 2008, and February 24, 2009. Tr. 365-80. During this time he diagnosed right ankle pain (Tr. 366), tinnitus, occasional dizziness (Tr. 367), right lower quadrant pain due to adhesions, nausea due to gastro-esophageal reflux disease, "complex left knee injury," (Tr. 372), abdominal pain (Tr. 376), and left knee sprain. Tr. 379.

On June 16, 2008, Dr. Westermeyer reported that Ms. Boyce twisted her left knee while dancing four days earlier and that she has been unable to bear weight on it since. Tr. 378. He wrote:

> Left knee looks OK to casual inspection because of obesity obscuring swelling. Palpation reveals moderate effusion. Mild varus instability without pain. Mild interior instability without pain. Tender over the medial collateral ligament. Rotational stress normal without pain. Posteriod drawer sign negative. Valgus stress stable. Patellar compression test negative.

Tr. 379.

On September 4, 2008, Dr. Westermeyer made a second entry addressing Ms. Boyce's knee. He wrote, in full: "Complex left knee injury, needs surgery, cannot work and pay bills until this is fixed, cannot get it fixed until she gets [health insurance] coverage." Tr. 372. On his visit summary notes, Dr. Westermeyer comments that he "discussed her dilemma with regard to her left knee injury," but his notes contain no other findings or observations. *Id.*

Also on September 4, 2008, Dr. Westermeyer wrote a letter to Disability Determination Services,[1] describing Ms. Boyce's complex left knee injury, including a torn meniscus, ruptured anterior cruciate ligament, and weakened lateral collateral ligament. Tr. 371. Dr. Westermeyer concluded, "I don't consider [Ms. Boyce] a candidate for disability as she has a correctable

---

[1] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration. 20 C.F.R. §§ 404.1503; 416.903.

PAGE 7, OPINION AND ORDER

problem. But I understand her trying just to get a source of medical [insurance] coverage so she can get her knee fixed and go through the subsequent [physical therapy] rehab." Tr. 371.

On July 23, 2009, Dr. Westermeyer submitted a letter to the record, which reads in full:

> This young lady injured both knees in a skiing accident in 2006. Because of the complex injury with documented MRI evidence of medial and lateral meniscus tears and ACL tear in the left knee (right knee has not been imaged, but also has an abnormal exam), *this lady is totally unable to work, and will not be able to work until she gets an orthopedic referral and surgery. After this is repaired, she has nothing holding her back from regaining the ability to be employed.*

Tr. 364 (emphasis added).

The ALJ discussed Dr. Westermeyer's treatment notes concerning the findings that Dr. Westermeyer articulated on June 16, 2008, and noted that Dr. Westermeyer recommended conservative treatment at that time. Tr. 17. The ALJ also noted that Dr. Westermeyer recommended knee surgery and concluded that this recommendation was based upon Ms. Boyce's subjective complaints rather than clinical findings. *Id.*

Ms. Boyce argues that the ALJ erroneously concluded that Dr. Westermeyer based his opinion solely upon the complaints of Ms. Boyce. Pl.'s Opening Br. 16. The record supports Plaintiff's argument. Rather than relying solely on Ms. Boyce's complaints, Dr. Westermeyer conducted a clinical examination, noting instability, tenderness and swelling. Tr. 379. In addition, an MRI ordered by Dr. Westermeyer showed an anterior cruciate ligament tear, a medical meniscus tear, and a lateral meniscus tear. Tr. 388. The ALJ's finding on the matter is contrary to the record and is therefore not sustained.

Ms. Boyce also argues that the ALJ erroneously evaluated Dr. Westermeyer's July 23, 2009, letter regarding disability. The ALJ wrote, "Dr. Westermeyer stated that he does not consider the claimant to be permanently disabled." Tr. 19. Ms. Boyce agrees that

Dr. Westermeyer did not consider Ms. Boyce to be "permanently" disabled, but argues that the ALJ nonetheless erred. Pl's Opening Br. 16. Ms. Boyce is correct.

The Commissioner's regulations state, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. §§ 404.1509; 416.909. Dr. Westermeyer made no statement regarding the length of Ms. Boyce's knee impairment, commenting only that he believed she was disabled "until" she could obtain surgery. This court cannot determine from the record whether and, if so, when, this surgery has occurred. Because the Commissioner's regulations only require that a claimant establish disability for "at least twelve months," the ALJ's rejection of Dr. Westermeyer's opinion, to the extent that it turns on a finding of no "permanent" disability, is not sustained.

Ms. Boyce also argues that the ALJ erroneously gave greater weight to examining physician Mitchell Sally, M.D., than to Dr. Westermeyer. Pl.'s Opening Br. 17. The Commissioner responds by stating that the ALJ did not rely upon Dr. Sally's opinion to reject Dr. Westermeyer's opinion. Def.'s Br. 15.

Dr. Westermeyer opined that Ms. Boyce is disabled due to her unresolved knee impairment. Tr. 364. Dr. Sally opined that Ms. Boyce had no limitations in walking or sitting, no postural limitations, and lifting limitations. Tr. 336. These opinions conflict. In such circumstances, the ALJ need only give "specific and legitimate" reasons for rejecting one of them. *Lester*, 81 F.3d at 830.

The ALJ's finding that Dr. Westermeyer did not provide adequate clinical support for his opinion is not based upon the record, as discussed above. The ALJ's rejection of Dr. Westermeyer's disability opinion is therefore not consistent with the Commissioner's

PAGE 9, OPINION AND ORDER

regulations. Thus, the ALJ failed to give a "specific and legitimate" reason for rejecting Dr. Westermeyer's opinion. The effect of this error by the ALJ is discussed below.

### B. Plaintiff's Credibility Relating to Her Symptom Testimony

Ms. Boyce asserts that the ALJ failed to give clear and convincing reasons for rejecting her symptom testimony.

#### 1. Standard

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**2.    Analysis**

The ALJ made no express credibility finding, other than to say Ms. Boyce's statements were inconsistent with the ALJ's RFC analysis. Tr. 17. The ALJ, however, also discussed several factors pertaining to Ms. Boyce's credibility, including her activities of daily living, use

of conservative treatment, and her medical record. *Id.* Ms. Boyce challenges each of these discussions to the extent that the ALJ based an adverse credibility finding on them.

### i.      Activities of Daily Living

The ALJ cited Ms. Boyce's daily activities, including driving, personal care, climbing stairs, making food, performing household chores, shopping, using a computer, knitting, and making jewelry. Tr. 19. The ALJ concluded that these activities were inconsistent with Ms. Boyce's allegation of disability. *Id.* The ALJ may cite a claimant's daily activities, and may conclude that they are inconsistent with the claimant's allegation of disability. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Ms. Boyce asserts that the ALJ "is over-stating" her activities. Pl.'s Opening Br. 16. She provides no legal authority or citation to the record, however, for this conclusion. Although a claimant need not "vegetate in a dark room" to show disability, *Cooper v. Bowen*, 815 F.3d 557, 561 (9th Cir. 1987), the reviewing court must defer to an ALJ's reasonable interpretation of a claimant's daily activities, even where another interpretation more favorable to the claimant may arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). Because Ms. Boyce does not explain the manner in which the ALJ's citation to her activities is not based upon the record or the correct legal standards, the ALJ's findings on this point will not be disturbed.

The ALJ also noted that Ms. Boyce exercises by walking and using an elliptical machine. Tr. 19. Ms. Boyce argues the ALJ erroneously cited her exercise program in finding her testimony about her limitations not to be credible. Pl.'s Opening Br. 16. Citation to a claimant's report of exercise, however, is insufficient to discredit a claimant when the exercise was recommended by the claimant's physician. *Reddick*, 157 F.3d at 722 n.3 (rejecting ALJ's credibility analysis predicated in part upon claimant's report of exercise recommended by a

physician). Here, treating physician Kenneth Sansome, M.D. recommended that Ms. Boyce exercise to treat her back pain. Tr. 394. The record therefore indicates that Ms. Boyce's physicians recommended exercise. Thus, the ALJ's citation to Ms. Boyce's exercise activity in his credibility analysis was insufficient and erroneous.

### ii.     Conservative Treatment

The ALJ's credibility analysis made several findings that Ms. Boyce received conservative medical treatment. The ALJ first noted that treating physician Dr. Westermeyer "recommended only conservative treatment" such as crutches, ice, and non-narcotic pain medication. Tr. 17. The ALJ also noted that Dr. Westermeyer recommended that Ms. Boyce obtain knee surgery but "apparently based his recommendation on the claimant's subjective complaints because he recorded no objective findings indicative of significant functional restrictions." Tr. 17. The first treatment may be fairly characterized as conservative; the second may not. Ms. Boyce argues that the ALJ's characterization of Dr. Westermeyer's surgical referral was erroneous. Pl.'s Opening Br. 13. As discussed above, the ALJ's findings regarding that opinion are not based upon the record, and are not sustained. Therefore, the ALJ's subsequent credibility findings based upon Dr. Westermeyer's surgical referral are also not sustained.

The ALJ also noted that Ms. Boyce received conservative treatment for her various pain complaints relating to abdominal, ankle, and knee pain, commenting that she only takes ibuprofen one to two times per week. Tr. 18. At her hearing, Ms. Boyce testified that her physicians will not prescribe stronger pain medication due to her depression. Tr. 18. Ms. Boyce challenges the ALJ's finding, arguing that "in light of her past history of polysubstance abuse, it is entirely appropriate for her to avoid narcotic medication." Pl.'s Opening Br. 13 (citing

Tr. 276-280). The record, however, shows that Ms. Boyce received pain medication, without reference to her depression or any history of substance abuse, on many occasions during the period under review. Tr. 237, 259, 262-63, 289, 298. The medical record thus contradicts both Ms. Boyce's testimony and her counsel's argument. Although Ms. Boyce argues that her use of ibuprofen is consistent with more than "conservative" treatment, Pl.'s Opening Br. 13-14, the ALJ's reference to her testimony on the matter is supported by the record and will not be disturbed.

The ALJ also noted that the record contains one psychological evaluation and found "scant" objective evidence that Ms. Boyce's alleged mental symptoms "subsequently worsened during the period at issue." Tr. 18. Ms. Boyce now asserts that the ALJ rejected her testimony in part because she received minimal mental health treatment. Pl.'s Opening Br. 14. Ms. Boyce correctly states that an ALJ may not chastise a mentally ill claimant for failing to seek appropriate treatment. *Id.* at 15 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ, however, made no such finding; the ALJ's conclusion addressed Ms. Boyce's symptoms over time. Ms. Boyce's argument is not based on the record and therefore fails.

Finally, Ms. Boyce's challenge to the ALJ's discussion of credibility argues that the ALJ erroneously relied upon the opinion of examining physician Dr. Sally. Pl.'s Opening Br. 14. The ALJ cited Dr. Sally's opinion that Ms. Boyce had no functional limitations and gave that opinion "great weight." Tr. 19. Ms. Boyce's challenge to the ALJ's credibility finding argues that Dr. Sally did not address her MRI examination, and that his opinion should be given "no weight." Pl.'s Opening Br. 14.

The ALJ's credibility analysis may cite a claimant's medical record in conjunction with other factors; the ALJ may not rely upon the medical record alone. *Robbins*, 466 F.3d at 883;

*Bunnell*, 947 F.3d at 346-47 (*en banc*). As a preliminary matter, the ALJ's reference to Dr. Sally's opinion, in combination with other evidence considered in her credibility analysis, was appropriate to the extent it was based upon the record.

The ALJ's discussion of Dr. Sally's opinion was limited to Dr. Sally's assessment of functional limitations. Tr. 19. Dr. Sally found Ms. Boyce unlimited in physical activity except as dictated by her "age and physical stature." Tr. 336. He based this finding upon clinical examination. As it pertains to her credibility challenge, Ms. Boyce states only that Dr. Sally's opinion should be rejected because he did not review her June 20, 2008, MRI showing several specific soft tissue injuries. Pl.'s Opening Br. 14.

This argument is unpersuasive. There is no dispute that Ms. Boyce has established that her knee is impaired. The relevant issue is whether that impairment causes limitations that preclude work activity. 20 C.F.R. §§ 404.1505; 416.905. Ms. Boyce, therefore, has not established that the ALJ's reference to Dr. Sally's opinion, and associated work-related limitations, is insufficient as a matter of law. Because the ALJ erroneously evaluated Dr. Westermeyer's opinion, however, as discussed above, the ALJ's reliance upon Dr. Sally's contradictory opinion to impugn Ms. Boyce's credibility is tainted. This reasoning is therefore not sustained.

### 3. Credibility Conclusion

The ALJ improperly pointed to Ms. Boyce's exercise activity and to Dr. Westermeyer's opinion in the ALJ's credibility analysis. Ms. Boyce, however, fails to show that the ALJ's reference to her remaining daily activities was erroneous. Because the ALJ's reasoning regarding Ms. Boyce's "conservative" medical treatment and the opinion of Dr. Sally is undermined by the ALJ's erroneous discussion of Dr. Westermeyer's opinion, which is not

sustained, this court also declines to sustain the ALJ's generalized credibility determination. The effect of this error is discussed below.

**C.    Lay Testimony**

Ms. Boyce challenges the ALJ's rejection of lay testimony submitted by her partner, Kellie Ciochon. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d at 1104, 1115 (9th Cir. 2012) (citing *Nguyen*, 100 F.3d at 1467); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The ALJ must provide germane reasons for rejecting such testimony. *Molina*, 674 F.3d at 1114 (citing *Doddrill*, 12 F.3d at 919). The ALJ, however, is not required to address each lay witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Molina*, 674 F.3d at 1114 (citing *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009)).

Ms. Ciochon completed a third party "function report" on September 15, 2008. Tr. 173-80. She wrote that Ms. Boyce works for an elderly woman two days per week but some days is "too depressed to leave the house." Tr. 173-74. Ms. Boyce cares for a guinea pig, but cannot bend down to the floor to clean its cage. Tr. 174. She cannot walk as far as she used to or run, jump, crouch, bend, twist, or dance. *Id.* Ms. Boyce sometimes has difficulty dressing due to knee pain, and sometimes finds it difficult to get off the toilet due to her knee problems. *Id.* She requires reminders to complete paperwork, bills, errands, and chores. Tr. 175. Ms. Boyce loves to cook, and does so. *Id.* With reminders, Ms. Boyce can do laundry, dishes, and "clean clutter." However, she is usually distracted and needs reminders to finish. *Id.* Her hobbies include knitting, watching television, cooking, and gardening, although she does not

finish projects. Tr. 177. Social activities include dinner with friends, board games, email, and talking on the phone. *Id.*

Ms. Ciochon wrote that Ms. Boyce "can't handle group social settings." Tr. 178. She is limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and in memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 178. Ms. Ciochon also indicated that Ms. Boyce uses crutches. Tr. 179.

Additionally, Ms. Ciochon submitted a letter to the record on April 20, 2010. Tr. 253-54. Here she described bending limitations, and stated that it takes "a long time" for Ms. Ciochon to complete tasks. *Id.* Ms. Ciochon stated that Ms. Boyce cannot stand or sit for long periods of time, and has limited ability to walk. *Id.* Finally, Ms. Ciochon also described Ms. Boyce's attempts to obtain health insurance. Tr. 254.

The ALJ wrote that he "considered" Ms. Coition's statements and found that they "generally reflect the same allegations made by the claimant, allegations that are not entirely credible for the reasons discussed above." Tr. 19. Ms. Boyce now argues that, while the allegations are similar, Ms. Ciochon's "descriptions . . . are expressed very differently" than those of Ms. Boyce and "add a valuable perspective." Pl.'s Opening Br. 8. Dkt. 9. The Commissioner responds that the ALJ was entitled to reject Ms. Coition's opinion because it repeated Ms. Boyce's opinion. Def.'s Br. 16.

As discussed above, the ALJ did not properly evaluate Ms. Boyce's testimony. The ALJ may reject lay testimony solely because it mirrors a claimant's testimony when the ALJ has properly rejected the claimant's testimony. *Valentine*, 574 F.3d at 694. Because the ALJ did not

properly reject Ms. Boyce's testimony, however, the ALJ's rejection of Ms. Ciochon's testimony is not sustained.

### D.     The ALJ's Step Five Findings

Finally, Ms. Boyce argues that the ALJ should have found her disabled at step five in the sequential proceedings.  Pl.'s Opening Br. 19. At step five in the sequential proceedings, the ALJ determines whether the claimant can perform work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.(a)(4)(v).  Here the ALJ may draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy.  20 C.F.R. §§ 404.1566(d)-(e); 416.966(d)-(e).  The ALJ's questions to the vocational expert must include all properly supported limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  Because the ALJ did not properly consider Dr. Westermeyer's opinion and the testimony of Ms. Boyce and Ms. Ciochon, the ALJ's step five findings cannot be affirmed.

### E.     Remand

The ALJ erroneously evaluated Dr. Westermeyer's opinion and the testimony of Ms. Boyce and Ms. Ciochon.  The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 US 1038 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)).  The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id* at 1138.

PAGE 18, OPINION AND ORDER

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's evaluation of Dr. Westermeyer's opinion and the indicated testimony is erroneous for the reasons established above. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

It is not clear, however, from the record that crediting the omitted evidence will establish that Ms. Boyce is disabled at step five in the sequential proceedings. The errors regarding Ms. Boyce's testimony and that of Ms. Ciochon are predicated upon the ALJ's errors in rejecting Dr. Westermeyer's testimony. Dr. Westermeyer stated that Ms. Boyce was disabled only until she received knee surgery, and clearly stated that she would not be disabled after surgery. Tr. 371. This court cannot now determine whether this event has occurred. Thus, outstanding issues must be resolved before a determination that an award of benefits is inappropriate. Accordingly, the court declines to credit the improperly omitted testimony. *Luna*, 623 F.3d at 1035. The matter must be remanded for further proceedings to address the indicated evidence.

If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must incorporate any revised findings, if applicable, into the ALJ's conclusions at steps four and five of the sequential analysis.

### IV.  CONCLUSION

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order. These proceedings must address Dr. Westermeyer's opinion and the testimony submitted by Ms. Boyce and the lay witness. That testimony consists of: (1) Ms. Boyce's April 28, 2010, hearing testimony; (2) Ms. Boyce's reports associated with her disability application; (3) Ms. Ciochon's September 15, 2008, third-party function report; and (4) the April 20, 2010, letter from Ms. Ciochon.

IT IS SO ORDERED.

DATED this 19th day of September, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge